**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 (Subchapter V) |
| Roti Restaurants Inc. ) | |
| Roti Restaurants, LLC ) | |
| ROTI 300 West Adams, LLC ) | Case No. 24-12410 |
| ROTI 1311 F Street LLC ) | Hon. Donald R. Cassling |
| ROTI 1629 K Street, LLC ) | |
| ROTI 1747 Pennsylvania Ave LLC ) | |
| ROTI Constitution Square LLC ) | (Joint Administration Pending) |
| ROTI Square 54, LLC ) | |
| ROTI 33 North Dearborn LLC ) | |
| ) | |
| Debtors. ) | |

**NOTICE OF EMERGENCY MOTION**

PLEASE TAKE NOTICE that on **Wednesday, August 28, 2024, at 10:00 a.m. C.T.** I will appear before the Honorable Donald R. Cassling, or any judge sitting in his place, **either** in courtroom 619 of the Everett McKinley Dirksen United States Courthouse or electronically as described below, and present the *Debtors' Emergency Motion for Interim and Final Orders (1) Authorizing the Use of Cash Collateral, (2) Granting Adequate Protection, and (3) Scheduling a Final Hearing on Final Authorization of Use of Cash Collateral*, a copy of which is attached.

Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.

**To appear by Zoom using the internet**, go to this link: http://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 161 414 7941, and the passcode is 619. The meeting ID and passcode can also be found on the judge's page on the court's web site.

1

In addition to other grounds for opposing the motion, you may oppose the motion on the basis that emergency treatment is not appropriate.

|  |  |
|---|---|
| Dated: August 26, 2024. | **RICHMAN & RICHMAN LLC**<br>**Proposed Attorneys for the Debtors** |

By: _____/s/ *Michael P. Richman*_____

Michael P. Richman
Claire Ann Richman
122 West Washington Avenue
Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law

## CERTIFICATE OF SERVICE

I, David T. Fowle, a paralegal, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method shown on August 26, 2024, on or before 11:59 pm.

                                                     */s/ David T. Fowle*
                                                      David T. Fowle

| **Via CM/ECF** | |
|---|---|
| Patrick S. Layng<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St., Room 873<br>Chicago, IL 60604<br>USTPRegion11.ES.ECF@usdoj.gov | |
| **Via U.S. Mail** | |
| 300 West Adams LLC<br>PO Box 30353<br>Lockbox MSBAM 2012-C6 W Adams St<br>Tampa, FL 33630 | CH Retail Fund II Chicago Clearwater LLC<br>PO Box 852033<br>Richardson, TX 75085 |
| Core Minneapolis LLC<br>Attn: Marc Lifshin<br>1643 N Milwaukee Ave<br>Chicago, IL 60647 | Davis Building LLC<br>c/o Floyd E. Davis Co.<br>1629 K Street NW, Suite 900<br>Washington, DC 20006 |
| Deodato.co LLC<br>70 Pine St, Apt 1416<br>New York, NY 10005 | GPI HRLP M AND O LP<br>PO Box 809233<br>Chicago, IL 60680-9201 |
| Harper Court Holdings LLC<br>176 N Racine, Ste 200<br>c/o McCaffery Interests Inc<br>Chicago, IL 60607 | Infosync Services<br>1938 N. Woodlawn. Suite 110<br>Wichita, KS 67208 |
| JBG/BC Chase Tower LP<br>Attn: Exec VP, Comm. Asset Mgmnt<br>4445 Willard Ave, Suite 400<br>Chevy Chase, MD 20815 | Jemals Harris & Ewing LLC<br>c/o Douglass Development Corp.<br>702 H Street NW, Suite 400<br>Washington, DC 20001 |
| Lechunza LLC<br>55 E Jackson Boulevard, Suite 500<br>Chicago, IL 60604 | Maiden Lane Properties<br>c/o Lalezarian Developers, Inc.<br>1999 Marcus Avenue, Suite 310<br>New Hyde Park, NY 11042 |

| | |
|---|---|
| Much Shelist<br>8477 Solutions Center<br>Chicago, IL 60677-8004 | Nash Technologies Inc<br>2261 Market Street #4286<br>San Francisco, CA 94114 |
| Provision Business Solutions LLC<br>PO Box 158<br>Sedalia, CO 80135 | Regency Centers LP<br>1568 Solutions Ctr<br>Chicago, IL 60677-7007 |
| RV Avenue LLC / Conserve<br>c/o Boston Properties<br>505 9th Street NW, Suite 800<br>Washington, DC 20004 | Schaumburg Meacham LLC<br>PO Box 851434<br>c/o Inwood National Bank<br>Richardson, TX 75085 |
| SYSCO<br>1390 Enclave Parkway<br>Houston, TX 77077 | Bellissimo Distribution LLC 1550<br>Hecht Road<br>Bartlett, IL 60103 |
| Uber Technologies Inc<br>1515 3rd St<br>San Francisco, CA 94158 | 200 North Michigan Owner LLC<br>c/o The John Buck Company<br>225 West Washington St, Ste 2300<br>Chicago, IL 60606 |
| Thanx Inc<br>PO Box 8481<br>Pasadena, CA 91109 | Dc.gov<br>John A. Wilson Building<br>1350 Pennsylvania Avenue NW<br>Washington DC 20004 |
| Newcastle Retail Management LLC<br>150 North Michigan Avenue<br>Suite 13610<br>Chicago, IL 60661 | North Avenue Properties LLC<br>Attn: Kenneth Skolnik<br>1000 W. North Ave, Suite 3<br>Chicago, IL 60622 |
| BRI 1855 IDS Center<br>c/o Accesso Services LLC<br>80 S. Eighth Street, Suite 650<br>Minneapolis, MN 55402 | AmTrust Realty Corp. A/A/F<br>33 N Dearborn St, Suite 1160<br>Chicago, IL 60602 |
| Washington DC IV FGF LLC<br>Attn: Douglass M Firstenberg<br>PO Box 13470<br>Richmond, VA 23225 | Travelers CL Remittance Center<br>13607 Collections Ctr Dr<br>Chicago, IL 60693 |
| 1747 Pennsylvania Avenue LP<br>PO Box 759403<br>Baltimore, MD 21275-9403 | Mats A. Lederhausen 2000 Trust<br>600 N. Fairbanks Ct,<br>PH 4001<br>Chicago, IL 60611 |
| McGriff Insurance Services, Inc.<br>3400 Overton Park Drive, Suite 300<br>Atlanta, GA 30339 | QTH Fund LLC<br>Attn: Burak Alici<br>2170 Buckthorne Place, Suite 320<br>Spring TX 77380 |

4

| | |
|---|---|
| QVIDTVM Inc.<br>Attn: Burak Alici<br>2170 Buckthorne Place, Suite 320<br>Spring, TX 77380 | Grossberg, Yochelson, Fox & Beyda<br>2000 L Street, N.W., Suite 900<br>Washington, DC 20006 |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 (Subchapter V) |
| Roti Restaurants, LLC ) | |
| Roti Restaurants Inc. ) | |
| ROTI 300 West Adams, LLC ) | Case No. 24-12410 |
| ROTI 1311 F Street LLC ) | Hon. Judge Donald R. Cassling |
| ROTI 1629 K Street, LLC ) | |
| ROTI 1747 Pennsylvania Ave LLC ) | |
| ROTI Constitution Square LLC ) | (Joint Administration Pending)[1] |
| ROTI Square 54, LLC ) | |
| ROTI 33 North Dearborn LLC ) | |
| ) | |
| Debtors. ) | |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS**
**(1) AUTHORIZING THE USE OF CASH COLLATERAL,**
**(2) GRANTING ADEQUATE PROTECTION, AND**
**(3) SCHEDULING A FINAL HEARING ON FINAL AUTHORIZATION**
**OF USE OF CASH COLLATERAL**

Roti Restaurants, LLC ("**Roti LLC**"); ROTI Restaurants Inc. ("**Roti Inc.**"); 300 West Adams, LLC ("**West Adams**"); ROTI 1311 F Street LLC ("**F Street**"); ROTI 1629 K Street, LLC ("**K Street**"); ROTI 1747 Pennsylvania Avenue LLC ("**1747 Penn Ave**"); ROTI Constitution Square LLC ("**Constitution Square**"); ROTI Square 54, LLC ("**Square 54**"); and ROTI 33 North Dearborn LLC ("**North Dearborn**") (each a

---

[1] The Debtors in these chapter 11 cases, the last four digits of their federal EIN number, and their case numbers are: Roti Restaurants, LLC (8307, Case No. 24-12410); Roti Restaurants Inc. (7804, Case No. 24-12412); ROTI 300 West Adams, LLC (8368, Case No. 24-12422); ROTI 1311 F Street LLC (7809, Case No. 24-12415); ROTI 1629 K Street, LLC (8057, Case No. 24-12416); ROTI 1747 Pennsylvania Avenue LLC (8680, Case No. 24-12418); ROTI Constitution Square LLC (7756, Case No. 24-12427); ROTI Square 54, LLC (0337, Case No. 24-12428); and ROTI 33 North Dearborn LLC (1546, Case No. 24-12425).

"**Debtor**", and collectively, the "**Debtors**"), by and through their proposed counsel, Richman & Richman LLC, by Attorneys Michael P. Richman and Claire Ann Richman, submit this emergency motion ("**Motion**") for entry of an interim order (1) authorizing the use of cash collateral, (2) granting adequate protection, and (3) scheduling a final hearing to consider the entry of an order granting the relief requested in this Motion on a final basis and approving the form of notice with respect to a final hearing. This Motion is further supported by the Declaration of Justin Seamonds in Support of the Debtors' Requests for First Day Relief ("**Seamonds Declaration**"), filed contemporaneously with this Motion.

## RULE 4001(b)(1)(B) PRELIMINARY STATEMENT

1.      The Debtors have an immediate need to use their cash to fund the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). The Debtors collectively hold cash on hand of approximately $267,000. This cash, along with anticipated revenues generated from the Debtors' business operations, is necessary to facilitate the Debtors' business operations and the administration of the Chapter 11 Cases. Accordingly, the Debtors seek entry of an interim order (attached hereto) ("**Interim Cash Collateral Order**") and a final order ("**Final Cash Collateral Order**") (together, the "**Cash Collateral Orders**") authorizing their use of cash collateral as proposed below.

| | |
|---|---|
| Name of each entity with an interest in cash collateral. | Mats A. Lederhausen 2000 Trust<br>QTH Fund LLC<br>QVIDTVM Inc. |
| Purpose of the use of cash collateral. | The Debtors request permission to use cash collateral to continue operating their businesses in these chapter 11 proceedings. The Debtors will use the funds to pay |

2

| | |
|---|---|
| | expenses relating to rent, payroll, utilities, professional services, insurance, and maintenance and repairs. |
| Material terms, including duration, of the use of cash collateral. | The Debtors seek permission to use cash collateral and to provide the Lenders with replacement liens (as set forth below) to continue operating as going concerns for the duration of these bankruptcy proceedings. |
| Terms of Adequate Protection | As adequate protection for any post-petition diminution in the value of Lenders' interests in their Prepetition Collateral caused by the entry of the Cash Collateral Orders, the Debtors' use of the Prepetition Collateral or Cash Collateral, or by the imposition of the automatic stay, the Debtors shall grant valid, binding, and enforceable post-petition liens on and security interests in all pre- and post-petition personal property, including intellectual property rights and tradenames, of the Debtors, and the proceeds of all real property leases, (the "**Adequate Protection Liens**") in an amount equal to the aggregate post-petition diminution in value of such interests from and after the Petition Date with the same validity, priority and extent as Lenders' interests in the Prepetition Collateral and junior in priority to the Carve-Out (defined below). |
| Budget | The Debtors may use Cash Collateral from the Petition Date through the date that is 120 days from the Petition Date (the "**Termination Date**"), in accordance with the Roti Cash Flow Projections (Seamonds Dec., Exh. A), provided that the Termination Date may be extended on consent of the Lenders or Court authorization on further motion. |
| Carveout | The "**Carve-Out**" means: (i) the quarterly fees and interest thereon required to be paid pursuant to 28 U.S.C. §1930(a)(6); (ii) any fees payable to the Clerk of the Court; (iii) in an amount not to exceed $10,000 all reasonable fees and expenses incurred by a trustee under section 1183(b) of the Bankruptcy Code; (iv) the accrued and unpaid fees and expenses incurred by the professionals retained by the Debtors, not to exceed the total of the amounts set forth in the relevant line items of the Budget; provided, however, that with respect to the foregoing clause (iv), such fees and expenses (A) shall be net of any unused retainers held by the respective professionals; (B) will only be paid to the extent allowed by the Court; and (C) will be subject to the rights of the Lenders and any other party in interest to object to the allowance thereof. |

3

| Events of Default: | • The Debtors anticipate negotiating with the Lenders prior to the entry of the interim cash collateral order certain standard events of default whereby their consent to the use of cash collateral would be withdrawn. |
|---|---|

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the order of reference in this District entered pursuant to § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the Debtors' bankruptcy estates. Venue is proper in this district pursuant to §§ 1404 and 1408.

3. The statutory predicates for relief sought in the Motion are 11 U.S.C. § 363(c)(2)(B), and Fed. R. Bankr. P. 4001(b) and 9014

## BACKGROUND

4. On August 23, 2024 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief, electing to proceed under Subchapter V of chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases.

5. The Debtors remain in possession of their property and are operating their businesses as debtors in possession, pursuant to §§ 1181 and 1184 of the Bankruptcy Code.

6. The Debtors are a group of affiliated businesses which own and operate fast-casual Mediterranean restaurants (the "**Restaurants**") in 19 locations in the United States, branded as "Roti Modern Mediterranean" "Roti Mediterranean Grill," "Roti Bowls. Salads. Pitas.", and "Roti" (collectively "**Roti**"). A more complete

4

description of the Debtors' business and history is set forth in the Seamonds Declaration.

7.  The Debtors use cash on hand and cash flow from their operations to fund their working capital needs, capital expenditures as necessary, and for other business purposes. Seamonds Declaration, ¶ 18. The Debtors' ability to reorganize and continue their operations depends on their ability to have full and immediate access to their cash, including access to such cash for payments to and for the benefit of the Debtors' employees and vendors. Without immediate access to their cash, the Debtors will be unable to pay payroll and employee benefit obligations, pay post-petition trade payables incurred in the ordinary course of their business, pay for post-petition utility services, and otherwise preserve and maximize the value of their estates and fund the administration of these Chapter 11 Cases. If the Debtors are not authorized to use cash collateral (approximately $1,423,333 in anticipated operational revenues during the first 21 days of these cases), including $104,230 of their approximately $267,000 of cash on hand at the Petition Date, the Debtors' estates would suffer immediate and irreparable harm to the detriment of the Debtors, their creditors, estates, and stakeholders.

8.  The Debtors believe that their cash on hand and cash generated from their business operations are encumbered by the Lenders identified below, who each assert certain interests in such cash, to the extent their prepetition interests are properly secured.

5

### Mats A. Lederhausen 2000 Trust

9. On March 2, 2023, Roti Inc., as borrower, and the Mats A. Lederhausen 2000 Trust (the "**Lederhausen Trust**"), as lender, entered into the Secured Promissory Note and Security Agreement, in the original principal amount of $1,250,000 ("**Lederhausen Trust Note**"). Pursuant to the Lederhausen Trust Note, as security for the full, prompt, and complete payment and performance when due of all indebtedness owed by Roti Inc. to the Lederhausen Trust, Roti Inc. pledged to the Lederhausen Trust, and granted a first priority security interest to the Lederhausen Trust in all of the following: 1) 83.33% of all funds still due to Roti Inc. as of March 2, 2023, from Roti Inc.'s 2021 employee retention credit ("ERC"); and 2) all of the personal property of Roti Inc., including without limitation all accounts, inventory (including raw material, work in process and finished goods), goods (including equipment, fixtures, machinery, vehicles and furniture), software, securities, investment property, financial assets, deposit accounts, chattel paper, electronic chattel paper, instruments, documents, letter of credit rights supporting obligations, commercial tort claims, general intangibles (including payment intangibles), insurance policies and proceeds insuring the forgoing property. As of the Petition Date, the Debtors believe they owe Lederhausen Trust under the Lederhausen Trust Note $1,549,444, comprised of $1,250,000 in principal and $299,444 in accrued interest.

### QTH Fund LLC

10. On March 2, 2023, Roti Inc., as borrower, and QTH Fund LLC ("**QTH Fund**"), as lender, entered into the Secured Promissory Note and Security Agreement, in the original principal amount of $200,000 ("QTH Fund Note"). Pursuant to the QTH Fund Note, as security for the full, prompt, and complete payment and performance when due of all indebtedness owed by Roti Inc. to QTH Fund, Roti In. pledged to QTH Fund, and granted a first priority security interest to QTH Fund in all of the following: 1) 13.33% of all funds still due to Roti Inc. as of March 2, 2023, from Roti Inc.'s 2021 employee retention credit ("ERC"); and 2) all of the personal property of Roti Inc., including without limitation all accounts, inventory (including raw material, work in process and finished goods), goods (including equipment, fixtures, machinery, vehicles and furniture), software, securities, investment property, financial assets, deposit accounts, chattel paper, electronic chattel paper, instruments, documents, letter of credit rights supporting obligations, commercial tort claims, general intangibles (including payment intangibles), insurance policies and proceeds insuring the forgoing property. As of the Petition Date, the Debtors believe they owe QTH Fund under the QTH Fund Note $247,911444, comprised of $200,000 in principal and $47,911 in accrued interest.

### QVIDTVM Inc.

11. On March 2, 2023, Roti Inc., as borrower, and QVIDTVM Inc. ("**QVIDTVM**" and together with the Lederhausen Trust and the QTH Fund, the "**Lenders**"), as lender, entered into the Secured Promissory Note and Security

7

Agreement, in the original principal amount of $50,000 ("QVIDTVM Note"). Pursuant to the QVIDTM Note, as security for the full, prompt, and complete payment and performance when due of all indebtedness owed by Roti Inc. to QVIDTVM, Roti In. pledged to QVIDTVM, and granted a first priority security interest to QVIDTVM in all of the following: 1) 3.33% of all funds still due to Roti Inc. as of March 2, 2023, from Roti Inc.'s 2021 employee retention credit ("ERC"); and 2) all of the personal property of Roti Inc., including without limitation all accounts, inventory (including raw material, work in process and finished goods), goods (including equipment, fixtures, machinery, vehicles and furniture), software, securities, investment property, financial assets, deposit accounts, chattel paper, electronic chattel paper, instruments, documents, letter of credit rights supporting obligations, commercial tort claims, general intangibles (including payment intangibles), insurance policies and proceeds insuring the forgoing property. (The Lederhausen Trust, QTH Fund, and QVDTM are referred to herein collectively as the "**Lenders**."). As of the Petition Date, the Debtors believe they owe QVIDTVM under the QVIDTVM Note $61,978, comprised of $50,000 in principal and $11,978 in accrued interest.

12.    The Debtors acknowledge and agree for purposes of this Motion that all of the Debtors' cash and cash equivalents, including the cash in certain of its deposit accounts, wherever located, whether as original Prepetition Collateral or proceeds of other Prepetition Collateral, constitutes cash collateral as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the Lenders,

8

premised upon the validity, priority and extent as the Lenders' interests in the Prepetition Collateral, and otherwise reserve all rights with respect thereto.

**The Debtors' Need for Cash Collateral**

13. As discussed herein, the Debtors have an immediate need to use their cash to fund these Chapter 11 Cases, including payment of payroll and employee benefit obligations, post-petition trade and vendor payables, post-petition utility payments, insurance premiums, and other necessary expenses. Payment of these obligations is necessary to maximize the value of the Debtors' estates and prevent irreparable harm to the value of the Debtors' businesses. The Debtors do not believe that they have sufficient unencumbered cash, if any, or other assets from which they can continue to meet their ongoing business obligations, and would otherwise incur substantial expense associated with securing traditional debtor-in-possession financing.

14. The Debtors have prepared a thirteen-week cash flow forecast and budget (the Roti Cash Flow Projections annexed as Exhibit A to the Seamonds Declaration, referred to herein as the "**Budget**"). The Budget contains line items for the cash the Debtors anticipate to receive and disburse during the first thirteen-weeks. The Debtors believe that the Budget (not accounting for operational and revenue improvements anticipated from a key employee incentive program they hope to implement upon Court approval) includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the Debtors' business for that period. The Budget demonstrates that (even without the foregoing improvements) the

9

Debtors' cash will on average not be diminished during the first 75 days of these cases, during which time the Debtors hope to complete auction sales of all or substantially all of their Assets, resulting in payments of several or more millions of dollars.

15. The Debtors expect during the first 21 days of these cases to utilize gross operating revenue of approximately $1,423,333, plus an additional $104,230 of cash on hand, to fund the expenses of its operations, and seek authority herein on an interim emergency basis to use Cash Collateral to that extent.

16. The Debtors have been in negotiations with counsel to the Lenders and anticipate being in a position to present to the Court by the time of the hearing a proposed fully consensual interim cash collateral order.

## BASIS FOR RELIEF REQUESTED

17. The Debtors' use of property of their estates, including cash collateral, is governed by 11 U.S.C. § 363. Section 363(c)(3)(A) allows debtors in possession to use cash collateral with the consent of "each entity that has an interest in such cash collateral" 11 U.S.C. § 363(c)(3)(A) or "the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." The Debtors have been negotiating with, and are hopeful of having the consent of the Lenders by the time of the hearing on this Motion. However, in the event an agreement cannot be reached in time, the Debtors respectfully request authority to use cash collateral (a) of up to $1,525,000 on an interim basis through the time of the final hearing on this Motion, and (b) thereafter in accordance with the Budget.

18. Courts have observed that "[t]here is an inherent tension between a debtor's need to use its cash to continue operating and a secured creditor's right to preserve its security interest in the debtor's cash proceeds." *In re ProAlert LLC*, 314 B.R. 436, 441 (9th Cir. B.A.P. 2004). To resolve the tension, the Bankruptcy Code allows a debtor in possession to use cash collateral if the court, "after notice and a hearing, authorizes such use" and the creditor's security interest is adequately protected. *Id*. The purpose of adequate protection is to prevent the diminution of value of the secured creditor's collateral and to preserve the secured creditor's position upon the commencement of a bankruptcy case. *See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994).

19. Section 363's requirement of adequate protection protects both interests "by allowing the debtor to use cash collateral while ensuring that the creditor will ultimately receive the full value of the collateral." Pursuant to section 361, the Debtors may provide adequate protection through periodic cash payments, providing additional or replacement liens, or granting other relief that will allow the creditor to realize the indubitable equivalent of its interest in property. Additionally, courts have agreed that an equity cushion, an excess of collateral value over the secured creditor's claim, can provide adequate protection. *See In re Aaura, Inc.,* 06-01853, 2006 L 2568048, at *2 (Bankr. N.D. Ill. Sept. 1, 2006 (citing *In re James Wilson Assocs.,* 965 F.2d 160, 171 (7th Cir. 1992); *In re Markos Guarantee P'ship,* 252 B.R. 712, 716-717 (Bankr. N.D. Ill. 1997); *See also* 3 Collier on Bankruptcy, ¶ 363.05[3] (16th ed.) ("While

11

cases are quite varied, substitute liens, equity cushions and operating controls have all been found sufficient.").

20. In order to protect the Lenders' security interest in cash collateral that existed on or after the date of the filing of the Chapter 11 Cases, the Debtors shall provide the Lenders with first position post-petition replacement liens (the "**Post-petition Liens**") to the same extent they possessed enforceable pre-petition liens, on all of the personal property of Roti Inc., including without limitation all accounts, inventory (including raw material, work in process and finished goods), goods (including equipment, fixtures, machinery, vehicles and furniture), software, securities, investment property, financial assets, deposit accounts, including the proceeds of any real property leases, chattel paper, electronic chattel paper, instruments, documents, letter of credit rights supporting obligations, commercial tort claims, general intangibles (including payment intangibles), intellectual property rights and tradenames, insurance policies and proceeds insuring the foregoing property.

21. The Post-petition Liens shall be deemed perfected as of the Petition Date upon the entry of an order granting this Motion to the same extent they were perfected prior to the Petition Date. The Lenders may, but are not required to, file financing statements to perfect the Post-petition Lien. The Post-petition Lien shall be deemed to attach to any such assets that Roti Inc. has an interest as described herein.

22. The Debtors submit that the collateral pledged to the Lenders will not decline in value for the reasonably foreseeable future, based on its Cash Flow Projections. Accordingly, the Debtors believe that the Lenders will be adequately protected as required by 11 U.S.C. § 363(e) for this Court to authorize the Debtors to use cash collateral. Accordingly, the Debtors respectfully request that the Court authorize the Debtors' use of cash collateral as set forth in their proposed budget.

**COMPLIANCE WITH BANKRUPTCY RULE 6003**

23. Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed in this Motion, the Debtors cannot operate without use of cash collateral, and if the relief sought in this Motion is not granted during the first 21 days of this Case, the Debtors' operations will be significantly disrupted, causing irreparable harm to the Debtors. The relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors require cash to pay expenses necessary to continue operating their businesses, as outlined in the Debtors' budget. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## NOTICE AND NO PRIOR REQUEST

24. Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF and overnight delivery to: (a) the United States Trustee for the Northern District of Illinois; (b) the Subchapter V Trustee assigned to the Chapter 11 Cases ("**Sub V Trustee**"); (c) the holders of the thirty largest unsecured claims against the Debtors; (d) the Debtors' Lenders; (e) the Debtors' landlords, and (e) other parties who have appeared. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

25. Following the entry of an interim order, the Debtors shall serve a copy of such interim order and notice of a hearing to consider the entry of a final order on the following parties, in lieu thereof, to their counsel, if known: (a) the United States Trustee for the Northern District of Illinois; (b) the Sub V Trustee; (c) the holders of the twenty largest unsecured claims against the Debtors; (d) the Debtors' Lenders; (e) the Debtors' landlords, and (e) other parties who have appeared.

## RESERVATION OF RIGHTS

26. The Debtors do not waive any rights, including, without limitation, the right to object to, challenge, or contest the extent, validity, or priority of any pre-petition liens and/or security interests, the amount of claims, or to value any or all of the collateral securing claims in this case.

## CONCLUSION

**WHEREFORE,** the Debtors respectfully request that the Court (1) enter interim and final orders (a) authorizing the use of cash collateral and (b) approving

14

adequate protection; (2) set a hearing to consider final authorization while the case is pending; and (3) grant such other relief the Court deems just and equitable under the circumstances.

Dated: August 26, 2024.

**RICHMAN & RICHMAN LLC**
**Proposed Attorneys for Debtors**

By:    /s/ Michael P. Richman
Michael P. Richman
Claire Ann Richman
122 West Washington Avenue, Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law

15