# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 (Subchapter V) |
| Roti Restaurants Inc. | ) | |
| Roti Restaurants, LLC | ) | |
| ROTI 300 West Adams, LLC | ) | Case No. 24-12410 |
| ROTI 1311 F Street LLC | ) | Hon. Donald R. Cassling |
| ROTI 1629 K Street, LLC | ) | |
| ROTI 1747 Pennsylvania Ave LLC | ) | |
| ROTI Constitution Square LLC | ) | (Joint Administration Pending) |
| ROTI Square 54, LLC | ) | |
| ROTI 33 North Dearborn LLC | ) | |
| | ) | |
| Debtors. | ) | |

---

## NOTICE OF EMERGENCY MOTION

---

PLEASE TAKE NOTICE that on **Wednesday, August 28, 2024, at 10:00 a.m. C.T.** I will appear before the Honorable Donald R. Cassling, or any judge sitting in his place, **either** in courtroom 619 of the Everett McKinley Dirksen United States Courthouse or electronically as described below, and present the *Debtors' Emergency Motion for Authority to (1) Maintain Existing Bank Accounts; (2) Continue Using Existing Cash Management Systems; (3) Continue Using Existing Business Forms; (4) Modify Deposit Requirements 4 Pursuant to 11 U.S.C. § 345(b); and for (5) Other Related Relief*, a copy of which is attached.

Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.

**To appear by Zoom using the internet**, go to this link: http://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 161 414 7941, and the passcode is 619. The meeting ID and passcode can also be found on the judge's page on the court's web site.

In addition to other grounds for opposing the motion, you may oppose the motion on the basis that emergency treatment is not appropriate.

**RICHMAN & RICHMAN LLC**

Dated: August 26, 2024.                    **Proposed Attorneys for the Debtors**

By: _____/s/ *Michael P. Richman*_____
Michael P. Richman
Claire Ann Richman
122 West Washington Avenue
Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law

## CERTIFICATE OF SERVICE

I, David T. Fowle, a paralegal, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method shown on August 26, 2024, on or before 11:59 pm.


_/s/ David T. Fowle_____
David T. Fowle


| Via CM/ECF | |
|---|---|
| Patrick S. Layng<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St., Room 873<br>Chicago, IL 60604<br>USTPRegion11.ES.ECF@usdoj.gov | |
| **Via U.S. Mail** | |
| 300 West Adams LLC<br>PO Box 30353<br>Lockbox MSBAM 2012-C6 W Adams St<br>Tampa, FL 33630 | CH Retail Fund II Chicago Clearwater LLC<br>PO Box 852033<br>Richardson, TX 75085 |
| Core Minneapolis LLC<br>Attn: Marc Lifshin<br>1643 N Milwaukee Ave<br>Chicago, IL 60647 | Davis Building LLC<br>c/o Floyd E. Davis Co.<br>1629 K Street NW, Suite 900<br>Washington, DC 20006 |
| Deodato.co LLC<br>70 Pine St, Apt 1416<br>New York, NY 10005 | GPI HRLP M AND O LP<br>PO Box 809233<br>Chicago, IL 60680-9201 |
| Harper Court Holdings LLC<br>176 N Racine, Ste 200<br>c/o McCaffery Interests Inc<br>Chicago, IL 60607 | Infosync Services<br>1938 N. Woodlawn. Suite 110<br>Wichita, KS 67208 |
| JBG/BC Chase Tower LP<br>Attn: Exec VP, Comm. Asset Mgmnt<br>4445 Willard Ave, Suite 400<br>Chevy Chase, MD 20815 | Jemals Harris & Ewing LLC<br>c/o Douglass Development Corp.<br>702 H Street NW, Suite 400<br>Washington, DC 20001 |
| Lechunza LLC<br>55 E Jackson Boulevard, Suite 500<br>Chicago, IL 60604 | Maiden Lane Properties<br>c/o Lalezarian Developers, Inc.<br>1999 Marcus Avenue, Suite 310<br>New Hyde Park, NY 11042 |

| | |
|---|---|
| Much Shelist<br>8477 Solutions Center<br>Chicago, IL 60677-8004 | Nash Technologies Inc<br>2261 Market Street #4286<br>San Francisco, CA 94114 |
| Provision Business Solutions LLC<br>PO Box 158<br>Sedalia, CO 80135 | Regency Centers LP<br>1568 Solutions Ctr<br>Chicago, IL 60677-7007 |
| RV Avenue LLC / Conservice<br>c/o Boston Properties<br>505 9th Street NW, Suite 800<br>Washington, DC 20004 | Schaumburg Meacham LLC<br>PO Box 851434<br>c/o Inwood National Bank<br>Richardson, TX 75085 |
| SYSCO<br>1390 Enclave Parkway<br>Houston, TX 77077 | Bellissimo Distribution LLC 1550<br>Hecht Road<br>Bartlett, IL 60103 |
| Uber Technologies Inc<br>1515 3rd St<br>San Francisco, CA 94158 | 200 North Michigan Owner LLC<br>c/o The John Buck Company<br>225 West Washington St, Ste 2300<br>Chicago, IL 60606 |
| Thanx Inc<br>PO Box 8481<br>Pasadena, CA 91109 | Dc.gov<br>John A. Wilson Building<br>1350 Pennsylvania Avenue NW<br>Washington DC 20004 |
| Newcastle Retail Management LLC<br>150 North Michigan Avenue<br>Suite 13610<br>Chicago, IL 60661 | North Avenue Properties LLC<br>Attn: Kenneth Skolnik<br>1000 W. North Ave, Suite 3<br>Chicago, IL 60622 |
| BRI 1855 IDS Center<br>c/o Accesso Services LLC<br>80 S. Eighth Street, Suite 650<br>Minneapolis, MN 55402 | AmTrust Realty Corp. A/A/F<br>33 N Dearborn St, Suite 1160<br>Chicago, IL 60602 |
| Washington DC IV FGF LLC<br>Attn: Douglass M Firstenberg<br>PO Box 13470<br>Richmond, VA 23225 | Travelers CL Remittance Center<br>13607 Collections Ctr Dr<br>Chicago, IL 60693 |
| 1747 Pennsylvania Avenue LP<br>PO Box 759403<br>Baltimore, MD 21275-9403 | Mats A. Lederhausen 2000 Trust<br>600 N. Fairbanks Ct,<br>PH 4001<br>Chicago, IL 60611 |
| McGriff Insurance Services, Inc.<br>3400 Overton Park Drive, Suite 300<br>Atlanta, GA 30339 | QTH Fund LLC<br>Attn: Burak Alici<br>2170 Buckthorne Place, Suite 320<br>Spring TX 77380 |

| QVIDTVM Inc. | Grossberg, Yochelson, Fox & Beyda |
| Attn: Burak Alici | 2000 L Street, N.W., Suite 900 |
| 2170 Buckthorne Place, Suite 320 | Washington, DC 20006 |
| Spring, TX 77380 | |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 (Subchapter V) |
| Roti Restaurants, LLC | ) | |
| Roti Restaurants Inc. | ) | |
| ROTI 300 West Adams, LLC | ) | Case No. 24-12410 |
| ROTI 1311 F Street LLC | ) | Hon. Judge Donald R. Cassling |
| ROTI 1629 K Street, LLC | ) | |
| ROTI 1747 Pennsylvania Ave LLC | ) | |
| ROTI Constitution Square LLC | ) | (Joint Administration Pending)[1] |
| ROTI Square 54, LLC | ) | |
| ROTI 33 North Dearborn LLC | ) | |
| | ) | |
| Debtors. | ) | |

---

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO
(1) MAINTAIN EXISTING BANK ACCOUNTS;
(2) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEMS;
(3) CONTINUE USING EXISTING BUSINESS FORMS;
(4) MODIFY DEPOSIT REQUIREMENTS PURSUANT TO 11 U.S.C. §
345(b); AND FOR (5) OTHER RELATED RELIEF**

---

Roti Restaurants, LLC ("**Roti LLC**"); Roti Restaurants Inc. ("**Roti Inc.**");

ROTI 300 West Adams, LLC ("**West Adams**"); ROTI 1311 F Street LLC ("**F Street**");

ROTI 1629 K Street, LLC ("**K Street**"); ROTI 1747 Pennsylvania Avenue LLC ("**1747

PA Ave**"); ROTI Constitution Square LLC ("**Constitution Square**"); ROTI Square

54, LLC ("**Square 54**"); and ROTI 33 North Dearborn LLC ("**North Dearborn**")

---

[1] The Debtors in these chapter 11 cases, the last four digits of their federal EIN number, and their case numbers are: Roti Restaurants, LLC (8307, Case No. 24-12410); Roti Restaurants Inc. (7804, Case No. 24-12412); ROTI 300 West Adams, LLC (8368, Case No. 24-12422); ROTI 1311 F Street LLC (7809, Case No. 24-12415); ROTI 1629 K Street, LLC (8057, Case No. 24-12416); ROTI 1747 Pennsylvania Avenue LLC (8680, Case No. 24-12418); ROTI Constitution Square LLC (7756, Case No. 24-12427); ROTI Square 54, LLC (0337, Case No. 24-12428); and ROTI 33 North Dearborn LLC (1546, Case No. 24-12425).

(each a "**Debtor**", and collectively, the "**Debtors**"), by their proposed attorneys, Richman & Richman LLC, by Attorneys Michael P. Richman and Claire Ann Richman, hereby submit this emergency motion ("**Motion**") seeking interim and final orders, substantially in the forms attached hereto, authorizing the Debtors to (1) continue using their prepetition cash management system subject to modifications as set forth in this Motion; (2) maintain its existing bank accounts; (3) continue using its existing business forms; (4) modify certain deposit requirements required for 11 U.S.C. § 345(b) for cause; and (5) granting such other related relief as is just and proper. In support of the Motion, the Debtors state as follows below. This Motion is further supported by the Declaration of Justin Seamonds in Support of the Debtors' Requests for First Day Relief ("**Seamonds Declaration**"), filed contemporaneously with this Motion.

## JURISDICTION & VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the order of reference in this District entered pursuant to § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the Debtors' bankruptcy estates. Venue is proper in this district pursuant to §§ 1404 and 1408.

2.      The statutory predicates for relief sought in the Motion are 11 U.S.C. §§ 105, 345, 363, 1194 and Federal Rules of Bankruptcy Procedure 6003 and 6004.

## BACKGROUND

3.      On August 23, 2024 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief electing to proceed under subchapter V of Chapter 11 (the "Chapter 11 Cases").

4.      The Debtors continue to manage their financial affairs as debtors in possession pursuant to Sections 1181 and 1184 of the United States Bankruptcy Code ("**Bankruptcy Code**").

5.      A more complete description of the Debtors' business and history is set forth in the Seamonds Declaration.

### A. The Debtors' Cash Management System

6.      As discussed in the Seamonds Declaration, the Debtors collectively operate administratively as a single enterprise. As such, the Debtors maintain a centralized cash management system in the ordinary course of their business operations (the "**Cash Management System**"), comparable to cash management systems used by similarly situated companies, to manage its cash in a cost-effective and efficient manner.

7.      The Cash Management System integrates the Debtors' various bank accounts, including those used for collections and the payment of operating expenses, and provides for intercompany transactions between the Debtors.

8.      The Cash Management System is administered by Roti LLC to collect funds from its retail restaurant locations, known as Roti Modern Mediterranean ("**Roti**") to fund operations and pay various operating and administrative expenses.

Roti LLC uses the Cash Management System in the ordinary course of business to collect, transfer, and distribute funds generated from its operations and to facilitate cash monitoring, forecasting and reporting.

**B. The Debtors' Existing Bank Accounts and Business Forms**

9. Roti LLC maintains commercial bank accounts, held at the financial institutions described as follows below (collectively, the "**Bank Accounts**"):

| | Financial Institution | Account Number | Address |
|---|---|---|---|
| | EagleBank | 200181949 | 5480 Wisconsin Ave, Suite 5476B, Chevy Chase, MD 20815 |
| | EagleBank | 200146975 | 5480 Wisconsin Ave, Suite 5476B, Chevy Chase, MD 20815 |
| | EagleBank | 200146983 | 5480 Wisconsin Ave, Suite 5476B, Chevy Chase, MD 20815 |
| | EagleBank | 200146991 | 5480 Wisconsin Ave, Suite 5476B, Chevy Chase, MD 20815 |
| | JPMorgan Chase Bank, NA | 731810037 | PO Box 182051, Columbus, OH 43218 |
| | Wells Fargo Bank, NA | 4226036564 | PO Box 6995, Portland, OR 97228 |
| | PNC Bank, NA | 4646735848 | 5455 W. Belmont Ave, Chicago, IL 60641 |
| | Manufacturers and Traders Trust Company d/b/a M&T Bank | 15004205908683 | 1 Light St, 16th Fl, Baltimore, MD 21202 |

10. Pursuant to the Cash Management System, cash payments, through wire, Automated Clearing House ("ACH"), or check, are initiated in one of two ways: 1) by Infosync, a third-party service provider, whose services include managing and reconciling the Debtors' accounts payable; and 2) directly by Roti LLC. The cash

4

payments initiated by Roti LLC are primarily wire transfers to the Debtors' various landlords for lease obligations. Cash is transferred between accounts manually by Roti LLC via portals of each of the financial institutions in which it holds accounts. Cash receipts are then accounted for in 3 ways: 1) deposits of physical currency into bank accounts by restaurant operators, 2) deposits of checks into the JPMorgan Chase bank account or 3) electronically, primarily from point of sale providers or credit card processors.

11.     The Debtors also regularly use company-specific business and banking forms, including checks; invoices; envelopes; purchase orders; guest receipts; and other common forms in their day-to-day business operations (collectively, the **"Business Forms"**).

C.  **The Debtors' Need to Maintain the Cash Management System and Facilitate Post-petition Operations**

12.     The Cash Management System affects all aspects of the Debtors' business operations, and is critical to the integrated management of the Debtors' financial affairs. The majority of the Debtors' business transactions are conducted electronically and tied directly to the Bank Accounts. Additionally, the Cash Management System is integrated directly with the Debtors' accounting systems to track and receive information regarding the Debtors' business, including tracking and accounting for receipts from specific sources, projecting future revenues and income, and managing employee, vendor, and customer payments and receipts. The Debtors need to be able to continue operating their respective businesses in the ordinary course under the Cash Management System. Requiring changes to the

existing system would likely be complex, time-consuming, and expensive, and could also disrupt regular business activities at a time when continuing operations is so critical to the Debtors' ability to reorganize.

13.     Additionally, given the nature of the Debtors' business, any disruption to the Cash Management System would have an immediate adverse effect on their business and operations to the detriment of their estates and numerous stakeholders. Accordingly, to minimize the disruption caused by these Chapter 11 Cases and to maximize the value of the Debtors' estates, the Debtors request authority, to continue to utilize their existing Cash Management System during the pendency of this Case, subject to the terms described in this Motion.

## RELIEF REQUESTED

14.     By this Motion, the Debtors seek interim and final orders granting the Debtors authority to, among other things: (1) maintain the Cash Management System as described in this Motion; (2) maintain the Bank Accounts; (3) continue using their existing Business Forms; and (4) modify certain investment & deposit requirements imposed by 11 U.S.C. § 345(b). The Debtors also request that the Court schedule a final hearing on this Motion within 45 days after entry of an interim order granting the Motion.

15.     Courts in this and other districts have regularly waived certain UST Guidelines and allowed for the implementation of alternative procedures such as those proposed by this Motion. *See, e.g., In re Morgan Administration Inc, et al.*, No. 18-30039 (JPC) (Bankr N.D. Ill. Nov. 21, 2018); *In re Quadrant 4 System Corp.*,

6

No. 17-19689 (JBS) (Bankr. N.D. Ill. July 7, 2017); *In re ITR Concession Co.*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re Edison Mission Energy,* No. 12-49219 (JPC) (Bankr. N.D. Ill. May 15, 2013); *In re GEI-RP (f/k/a Giordano's Enters., Inc.)*, No. 11-06098 (ERW) (Bankr. N.D. Ill. Feb. 17, 2011).

### A. The Court Should Authorize the Debtors' Continued Use of the Bank Accounts & Cash Management System

16.     The Debtors seek authority from this Court to maintain their existing Bank Accounts and continue using the Cash Management System under Bankruptcy Code §§ 105(a) and 363(c).

17.     Unless otherwise ordered by the Court, the United States Trustee ("**UST**"), through its *Operating Guidelines for Chapter 11 Cases* (the "**UST Guidelines**"), requires that the Debtors, as debtors in possession: (a) each establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain separate debtor in possession accounts for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and the type of account on such checks. *See* UST Guidelines at ¶ 2.

18.     These requirements are designed to provide a clear line of separation between prepetition and post-petition transactions, and help protect against the inadvertent post-petition payment of prepetition claims. The Debtors submit that in these Chapter 11 Cases, strict enforcement of the UST Guidelines would severely

disrupt the ordinary financial operations of the Debtors by reducing efficiencies and causing unnecessary expense.

19.    The Debtors' Bank Accounts are held at financially stable banking institutions. To protect against the unauthorized payment of prepetition obligations, the Debtors represent that, if they are authorized to use the Bank Accounts, they will not pay any debts incurred before the Petition Date other than as authorized by this Court. Moreover, any new account that the Debtors open will (a) be with a bank that (i) is organized under the laws of the United States or any state therein, (ii) is insured by the FDIC, and (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the Office of the United States Trustee ("UST"); (b) be designated a "debtor in possession" account by the relevant Bank; and (c) comply with applicable provisions of any financing order entered in this Case. Additionally, the Debtors will provide the UST and Subchapter V Trustee assigned to these Chapter 11 Cases ("Sub V Trustee") with notice before opening any new bank accounts.

20.    Enforcing the UST's requirements without modification could significantly disrupt the Debtors' business. Indeed, as explained in more detail above, the Bank Accounts are integral components of the Cash Management System that allow the Debtors to centrally manage cash collection and disbursements in their multiple retail locations.

21.    The Debtors' current Cash Management System also enables the Debtors to trace funds and ensure that all transactions are adequately documented and readily ascertainable. The Debtors submit that parties in interest will not be

8

harmed by the Debtors' maintenance of the Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date. Requiring the Debtors to open new bank accounts at this critical juncture would increase operating costs and cause delays that would negatively impact the Debtors' ability to operate their business.

22.    The seamless operation of the Debtors' business will maximize the value of the Debtors' estate, and they should therefore (a) be permitted to continue maintaining  the  Bank Accounts and open new or close existing accounts as needed; and (b) have the relief sought in this Motion extend to any new accounts, by providing that such accounts are deemed Bank Accounts of the Debtors subject to the provisions of any interim or final order entered by the Court granting this Motion.

23.    Despite the requirements set forth in the UST Guidelines, Bankruptcy Code Section 363(c)(1) nevertheless permits the Debtors' continued use of the Bank Accounts and Cash Management System, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

24.    To the extent that using the existing Cash Management System falls outside the ordinary course of business, such use is permitted by Bankruptcy Code Sections 363(b)(1) and 105(a). Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Additionally, Section 105(a) further provides that this Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id* at § 105(a).

25.     Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system allows a debtor ""to administer more efficiently and effectively its financial operations and assets." *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all bank accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061.

26.     Here, requiring the Debtors to adopt new, segmented cash management systems would be expensive, create unnecessary administrative burdens, and be unnecessarily disruptive to the operation of the Debtors' business. The existing Cash Management System, including use of the Bank Accounts, allows the Debtors to efficiently handle receivables, pay vendors, fund payroll, maintain insurance, pay taxing authorities and regulatory entities, and maintain appropriate reserves for taxes and other business-related obligations. A disruption of this system could have a severe and adverse effect on the Debtors' operations and needlessly harm the value of its business enterprise. By contrast, maintaining the current Cash

Management System would greatly facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.

27.     The Debtors submit that parties in interest will not be harmed by maintaining the Cash Management System, including the Bank Accounts, because the Debtors will implement appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court. With the assistance of their professional advisors, the Debtors will implement internal protocols that prohibit payments on account of prepetition debts. The Debtors will continue to work closely with the Banks to issue stop payment orders on any checks that were issued prepetition so they will not be honored without the Court's approval. In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

28.     The Debtors therefore request that the Court authorize their continued use of the existing Cash Management System. The Debtors specifically request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as bank accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. The Debtors further request that the Court authorize and direct the Banks to receive, process, honor, and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the

11

Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that the Debtors will issue a stop payment order on any check or draft drawn, issued, or otherwise presented prior to the Petition Date on prepetition debt so they will not be honored by the Bank except to the extent authorized by order of the Court.

29.    The Debtors also request that, to the extent the Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because these banks are not in a position to independently verify or audit whether the Debtor may pay a particular item in accordance with a Court order or otherwise.

30.    Finally, the Debtors request that the Court authorize them to continue to pay the Banks' ordinary course banking fees, and authorize the Banks (including any additional banks at which the Debtors may open new accounts under the terms of an order granting this Motion) to chargeback returned items to the appropriate Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

**B. The Court Should Authorize the Debtors to Honor Certain Prepetition Obligations Related to the Cash Management System**

31.     In connection with the Cash Management System, the Debtors may incur fees and other charges (collectively, all such fees and charges, the "**Bank Account Claims**") in connection with (a) checks that have been dishonored or returned for insufficient funds in the applicable account, and (b) any reimbursement or other payment obligations, such as overdrafts, arising under any agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements (the "**Bank Account Agreements**"). Although the Debtors do not believe that there were any outstanding Bank Account Claims as of the Petition Date, the Debtors seek authority under Sections 105(a) and 363(b) of the Bankruptcy Code, to, in their sole discretion, pay or reimburse as necessary, the Banks in the ordinary course of business for any Bank Account Claims arising prior to, on, or after the Petition Date.

32.     The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion either (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition. As part of this Motion, the Debtors are  requesting authority, but not direction, to pay certain prepetition obligations.

33.    With respect to some of these obligations, the Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtors may issue the relevant check once the Court enters an order permitting the Debtors to do so.

34.    The Debtors intend to issue stop payment orders on such checks that should not be honored. Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored. The Debtors submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

## C. The Court Should Authorize the Debtors to Continue Using its Existing Business Forms

35.    To avoid disruption of the Debtors' Cash Management System and unnecessary expenses to the estate, the Debtors also seek authority to continue using their existing Business Forms, which do not include checks, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession. Moreover, the Debtors submit that the continued use of their current Business Forms will not prejudice parties in interest because parties doing business with the Debtors will undoubtedly know of the Debtors' status as debtors-in-possession. Thus, modifying the Debtors' existing Business Forms is unnecessary and would be unduly burdensome to the Debtors.

**D. The Court Should Authorize the Debtors to Continue Using Debit & Wire Transfers**

36.    The Debtors request that the Court grant further relief from the UST Guidelines requirement that all disbursements of estate funds be done by check and include a notation representing the reason for the disbursement. Considering the nature of the Debtors' operations, the Debtors need to conduct transactions by debit or wire transfers and other similar electronic methods. If the Debtors are denied the opportunity to conduct transactions by debit, wire transfers, or other such methods used in the ordinary course of business, the Debtors' business operations would be disrupted unnecessarily, burdening the Debtors and their creditors with additional expenses. Thus, the Debtors request authority from this Court to continue using debit, wire transfers, or other electronic methods in the ordinary course of its business to avoid disruption of the Debtors' Cash Management System.

**E. Cause Exists to Modify Section 345(b)'s Deposit Requirements**

37.    Bankruptcy Code Section 345 governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) requires the estate to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the

15

undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the Court "for cause" orders otherwise. 11 U.S.C. § 345(b).

38.     In evaluating whether "cause" for modification or waiver of these requirements exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver or modification of the Section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver or modification under the circumstances. *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of Section 345 to the extent the Cash Management System does not already strictly comply with its requirements.

39.     As shown above, the Bank Accounts are maintained at EagleBank, JP Morgan Chase Bank, NA; Wells Fargo Bank, NA; PNC Bank, NA; and Manufacturers and Traders Trust Company d/b/a M&T Bank (each a "Bank", and collectively, the "Banks") Eagle Bank and M&T Bank are authorized depositories under the UST Guidelines in the District of Columbia, and JP Morgan Chase Bank, NA; Wells Fargo Bank, NA; and PNC Bank, NA are authorized depositories under the UST Guidelines in the Northern District of Illinois. Additionally, the Banks are

16

insured by the FDIC. Therefore, the Bank Accounts comply with Bankruptcy Code Section 345(b). Out of an abundance of caution, however, to the extent that any Bank Accounts do not strictly comply with Section 345, the Debtor submits that cause exists to suspend any such noncompliance on an interim basis as set forth in this Motion, given that all funds are deposited safely and prudently at financially-stable banking institutions.

**BANKRUPTCY RULE 6003 IS SATISFIED**

40.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed in the Seamonds Declaration and above, (a) authorizing the Debtors to (i) continue using its existing Cash Management System, Bank Accounts, and Business Forms, and (ii) honor prepetition obligations related to the use thereof; and (c) waiving deposit requirements of Section 345 is integral to the Debtors' ability to transition its operations into this Case.

41.    Failure to receive such authorization and other relief during the first 21 days of this Case would disrupt the Debtors ability to operate at this critical juncture. Thus, the relief requested here is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtors submit they have satisfied the "immediate and

17

irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) & (h)

42.    To implement the relief sought here successfully, the Debtors also request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

43.    Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' property; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease under Bankruptcy Code Section 365; or (f) a limitation on the Debtors' rights under Bankruptcy Code Section 365 to assume or reject any executory contract or unexpired lease with any party, subject to the provisions of any orders entered by this Court granting the relief requested by this Motion. Nothing contained in the proposed orders attached to this Motion shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

18

## NOTICE AND NO PRIOR REQUEST

44.     Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF and/or overnight delivery to: (a) the United States Trustee for the Northern District of Illinois; (b) the Subchapter V Trustee assigned to these Chapter 11 Cases (the "**Sub V Trustee**"); (c) the holders of the thirty largest unsecured claims against the Debtors; and (d) the Debtors' prepetition lenders. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given. The Debtors will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

45.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter interim and final orders, substantially in the same form attached to this Motion: (a) granting the relief requested in this Motion; and (b) any other further relief the Court deems appropriate under the circumstances.

**[Signatures appear on the following page.]**

19

Dated: August 26, 2024.

**RICHMAN & RICHMAN LLC**
**Proposed Attorneys for Roti**
**Restaurants Inc.**

By:

/s/ Michael P. Richman

Michael P. Richman
Claire Ann Richman
122 West Washington Avenue,
Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law